STATE EX REL. CHARLES HEISS *v.* STANLEY H. OSBORN, COMMISSIONER OF HEALTH

SUPERIOR COURT     FAIRFIELD COUNTY     FILE NO. 94851

462

Memorandum filed July 29, 1955.

*Goldstein & Peck,* of Bridgeport, for the plaintiff.

*John J. Bracken,* attorney general, and *Louis Weinstein,* assistant attorney general, of Hartford, for the defendant.

RYAN, J.   This is an action for a mandamus to compel the defendant to issue to the relator, pursuant to § 1663c of the 1953 Cumulative Supplement to the General Statutes, a certificate of registration as a person entitled to practice chiropractic in this state. In November, 1953, Charles Heiss of Fort Lauderdale, Florida, made written application to the board of chiropractic examiners to practice chiropractic in Connecticut by certificate from the state of Florida without examination. On January 23, 1954, the board issued certificate of approval No. 90 and sent it to the state department of health. On January 26, 1954, the commissioner of health returned the certificate to the board because it referred to sections of the Revision of 1930 of the General Statutes instead of the Revision of 1949. This certificate was replaced by certificate No. 91, which was dated the same day as certificate No. 90 but in a form suggested by the attorney general with proper statutory references. The certificate was accompanied by a letter from the board dated June 22, 1954, directing the commissioner of health to take no action until such time as litigation then in progress was concluded, "then action is to follow the findings of the court." The

litigation referred to was an action by Dr. Carlisle White and the Connecticut Chiropractors Association, dated February 12, 1954, claiming an injunction restraining the members of the board of chiropractic examiners and the commissioner of health from issuing a certificate of approval or a certificate of registration to Dr. Heiss. On July 1, 1954, Dr. White, a plaintiff in the injunction action, replaced Dr. Barber on the board of chiropractic examiners. On July 23, 1954, the board revoked certificate of approval No. 91 on the ground that the board was unable to ascertain that Dr. Heiss had the qualifications to be eligible for licensure in Connecticut by reciprocity. On October 2, 1954, the action for an injunction was withdrawn by the plaintiffs, Dr. White and the Connecticut Chiropractors Association. On October 8, 1954, the commissioner of health informed relator's counsel that he would not issue a license because the board "reviewed the application made by Dr. Heiss and voted that his application be denied." Thereafter the commissioner returned certificate No. 91 to the board and has refused to furnish relator blanks upon which to apply for a certificate of registration and has refused to issue such certificate of registration.

The respondent admits most of the allegations of the complaint but offers four defenses which will be considered in order. In the first defense, there is the apparent claim that the letter of June 22, 1954, which accompanied the reissued certificate of approval No. 91, was a restrictive qualification which the board was empowered to make. This claim is without merit and in any event the action was withdrawn on October 2, 1954. The principal claim in this defense is that on July 23, 1954, the board voted that the application be denied, thus rescinding its former action; that prior to the bringing of this action the respondent returned the certificate to the

board, and since he no longer had a certificate of approval on file, he could not furnish relator with an application for a certificate of registration or issue such a certificate. The action of the board was without notice to the relator and without a hearing and was, therefore, invalid. *State ex rel. Taylor* v. *Osborn,* 136 Conn. 83. Under the circumstances, the commissioner of health should not have returned the certificate to the board, nor can he now rely on this action as a defense.

The second defense refers to the action by Dr. White and the Connecticut Chiropractors Association for an injunction against the board and the commissioner of health and pleads an agreement between the attorney general's office and the attorney for the plaintiffs in that action that neither the board nor the commissioner of health, whom it represented, would take any further action in connection with relator's application until the injunction action was terminated, and that the agreement was violated by the board in issuing certificate of approval No. 91. On the trial the court excluded evidence on this defense since it was obviously hearsay and could not by any stretch of the imagination bind the relator.

The third defense pleads the relator's lack of educational qualifications and alleges that it is against the public interest to compel the commissioner to issue a certificate of registration to one without the necessary educational requirements. The determination of this question was within the province of the board and is not subject to collateral attack in this proceeding. *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530; *State ex rel. Taylor* v. *Osborn,* supra.

The fourth defense alleges that because of relator's attempt to mislead the board by false answers

in his application he is unworthy to be admitted to practice chiropractic in this state. The essence of the defense is that the granting of an order by this court compelling the commissioner to issue a certificate of registration would be contrary to the public interest. That expression was not used in the fourth defense but it was so regarded by the court and counsel throughout the trial.

The writ of mandamus " 'is not issued as a matter of right, but in the exercise of a judicial discretion which takes into account other considerations than the legal right of the relator. . . . The relator must come into court with clean hands.' " *State ex rel. Lacerenza* v. *Osborn,* supra, 534. If the right asserted by the relator is asserted contrary to the public interest, the court may refuse its aid in a mandamus proceeding. *State ex rel. Hansen* v. *Schall,* 126 Conn. 536, 543.

The question is whether there is a factual basis sufficient to permit any exercise of this discretionary power by the court. The conduct and character of the relator have been attacked. In his application, relator was required to answer the following question: "Name of high school you graduated from or equivalency." He answered as follows: "Equivalency certification Columbia University, Professor Wm. Peterfield Trent." Respondent's exhibit 8 is a copy of a letter dated October 13, 1936, filed with the board, which was thus referred to by the relator. A perusal of it reveals that Columbia University had no connection with the so-called certificate. It is merely a letter signed by a professor emeritus of Columbia University stating that he spent several hours questioning Heiss on matters relating to literature, history and popular science and that as a result he was convinced that Heiss has an exceptionally alert mind and a store of information far above the ordinary. While it appears from the minutes of the

board that the educational prerequisites of the relator were not determined on the basis of the so-called certificate, the answer was false and calculated to mislead the board. This is particularly significant because in 1931 the healing arts board refused to permit relator to take the examination because he did not have a high school education or its equivalent. Following this refusal the relator practiced chiropractic in Stamford, Connecticut, for a period of five years without a license. In 1936, he was convicted in the Court of Common Pleas for Fairfield County on two counts of practice of chiropractic without a license and sentenced to pay a fine of $100 on each count. In 1936, relator sought a license to practice in Connecticut by reciprocity from Iowa. In that application he stated that he had practiced for five years in Iowa. He explained this at the trial by saying that he considered his attendance at clinics at the Palmer School of Chiropractic for two weeks each year as giving him five years of practice in Iowa. He had no office in Iowa and was actually living in Stamford, Connecticut, and practicing without a license throughout this period.

On his application in 1953 he answered "No" to the question, "Have you ever been convicted of any crime?" He explained this to the court by saying that he did not intend to mislead the board; that he believed the board members would know about his conviction and that he felt in his heart that he was not convicted of a crime. It is true that the board members did know of his conviction and considered it. Nevertheless, the relator's answer to the question was consciously false. The following question and answer appear on relator's application: "Have you ever been rejected for license to practice chiropractic in any state? If so give details." Answer: "Connecticut—1936—rejected application for reciprocity with state of Iowa because of inadequate length of

practice in Iowa." By such answer the relator attempted to conceal from the board the fact that his application to take the examination in 1931 was rejected by the healing arts board and the further fact that an application for a Connecticut license by reciprocity from the state of Iowa was rejected on May 5, 1948, by the board of chiropractic examiners. The relator says he omitted mention of the 1931 application because he was not permitted to take the examination and therefore did not consider it a rejection. As for the 1948 rejection he just forgot it. It is apparent that relator's willingness to tell the truth is no better now than it was in 1936.

It is true that the duty of the respondent to issue the application blanks and the certificate of registration is ministerial and there is no discretion in the performance of the acts demanded of him. *State ex rel. Lacerenza* v. *Osborn,* 133 Conn. 530. There is, however, a duty upon the court to exercise discretion when, as here, the right asserted is contrary to the public interest. The relator's efforts to obtain a license in Connecticut have been persistent since 1939, and one might sympathize with his desire to practice in the state of his choice. It would, however, be contrary to the public interest for the court to lend its assistance to one who deals so carelessly with the truth. The relator does not come into court with clean hands.

The application for a writ of mandamus is denied.